UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DWAN ORLANDO WILLIAMS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:09 CV 1893 RWS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before me on Dwan Orlando Williams' Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255. For the reasons set forth below, the motion will be denied.

**I.      Background**

On May 15, 2008, Dwan Orlando Williams ("Williams") was indicted on one count of possession with the intent to distribute in violation of 21 U.S.C. §841(a)(1), one count of possession of a firearm in connection with a drug trafficking crime 18 U.S.C. §924(c), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. §922(g)(1). On September 2, 2008, Williams pleaded guilty to being a felon in possession of a firearm, and the prosecution agreed to dismiss the other two counts.

The following facts are established by Williams' plea agreement entered in the underlying criminal case:

On April 6, 2008, officers with the Saint Louis Metropolitan Police Department were investigating a report of the defendant standing in front of the location of 5730 Highland selling drugs.  Police officers responded to the locations of 5730 and 5732 Highland located within the City of Saint Louis which is, therefore, necessarily located within the federal jurisdiction of the Eastern District

1

of Missouri. The officers conducted surveillance upon arrival.

During surveillance, officers observed defendant standing in front of 5730 Highland. Two separate individuals walked up to defendant and engaged in brief conversations. Following the each [sic] conversation, defendant walked to the west side of the 5730 Highland residence in-between 5732 Highland, bent over, retrieved an object, and returned to the individual. A hand-to-hand transaction then occurred.

Defendant then entered a vehicle. One of the officers approached defendant. Another officer responded to the area in the gangway where defendant was seen walking and retrieving items. The officer located three chunks of crack cocaine wrapped in plastic in the gangway. A .32 caliber semi-automatic pistol was also located. The pistol was loaded with six rounds in the magazine and one round in the chamber. The items were seized.

Defendant was placed under arrest and advised of his Miranda rights. Defendant stated that he understood his rights. Defendant then made voluntary statements indicating his possession with the intent to distribute the cocaine base (crack) and his knowing possession of the firearm. A subsequent search of defendant located $548 in various United States currency.

The suspected controlled substances were submitted to the Saint Louis Metropolitan Police Department Laboratory for analysis by an expert criminalist. The suspected narcotics were determined to be cocaine base (crack), a Schedule 2 narcotic controlled substance, weighing 1.59 grams. The cocaine base (crack) is "crack" defined in Section 2D1.1, Note D.

The firearm was analyzed by an expert firearms examiner with the Saint Louis Metropolitan Police Department Crime Laboratory. It was determined to by a Unique make, 17 model, .32 Auto caliber semi-automatic pistol bearing serial number 410000. The pistol was manufactured in France. Therefore, it traveled through foreign and interstate commerce to make its way to Missouri and defendant's possession. The firearm was test fires and deemed operable. The examined handgun is a "firearm" as defined under federal law.

By virtue of his guilty plea, defendant admits that he has previously been convicted of at least one felony crime and that, despite that fact, knowingly possessed a firearm.

Lastly, following defendant's arrest, defendant filed a complaint with the Saint Louis Metropolitan Police Department's Internal Affairs Division making certain allegations against the officers involved in defendant's arrest. The allegations contained in that complaint were false. As a result of defendant's guilty plea, defendant acknowledges and confirms that those allegations were false.

Case No. 4:08CR298 RWS [Doc. # 47, pp. 11-12].

At his change of plea hearing, Williams was placed under oath and swore to testify

2

truthfully, subject to the penalties of perjury. I held the following colloquy with Williams about his representation:

THE COURT: Have you had enough time to discuss your case with your lawyer?

MR. WILLIAMS: Yes, sir.

THE COURT: Is there anything you think your lawyer should have done but did not do in representing you?

MR. WILLIAMS: No, sir.

Case No. 4:08CR298 RWS [Doc. # 39, p. 6].

Williams then told me that he read the plea agreement and reviewed it with his counsel before he signed it:

THE COURT: Did you read this document [plea agreement] before you signed it?

MR. WILLIAMS: Yes, sir.

THE COURT: Go over it with your lawyer?

MR. WILLIAMS: Yes, I did.

THE COURT: Did he answer all your questions?

MR. WILLIAMS: Yes, he did.

THE COURT: Do you believe you understand what's in this document?

MR. WILLIAMS: Yes.

THE COURT: Is everything in here true?

MR. WILLIAMS: Yes, it is.

Case No. 4:08CR298 RWS [Doc. # 39, p. 9].

Later in the hearing Williams told me he believed the prosecution could prove Count III beyond a reasonable doubt:

THE COURT: [If] you don't believe the United States could prove all those things beyond a reasonable doubt, you should not plead guilty today.   Do you understand that?

MR. WILLIAMS: Yes.

THE COURT: If you don't believe it, I have no interest in accepting your guilty plea today either.  Do you understand that?

MR. WILLIAMS: Yes.

Case No. 4:08CR298 RWS [Doc. # 39, p. 17].

Williams also acknowledged that he was waiving his right to contest his conviction or sentence in any post-sentence proceeding, except for claims of prosecutorial misconduct or ineffective assistance of counsel.   On November 21, 2008, I sentenced Williams to 95 months of imprisonment followed by two years of supervised release.

On November 16, 2009, Williams' filed his § 2255 motion.   On January 11, 2010, I granted Williams' motion to appoint counsel.   On June 29, 2010, Williams' court-appointed counsel filed an amended petition.[1]   On November 7, 2011, Williams filed a "Pro Se Supplemental Amendment of Petition to Vacate, Set Aside Or Correct, Sentence, Pursuant to 28 U.S.C. § 2255."[2]

II.   **Grounds For Relief**

In Williams' amended petition filed by court-appointed counsel on June 29, 2010, he

---

[1] "It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect."   In re Wireless Telephone Federal Cost Recovery Fees Litigation, 396 F.3d 922, 928 (8th Cir. 2005).   Accordingly, I will not consider the grounds for relief asserted in Williams' pro se complaint [Doc. # 1], and will only address the ineffective assistance of counsel claims contained in Williams' amended complaint.

[2] Williams requested and was appointed counsel to represent him, so he is not entitled to also represent himself *pro se*.   "A district court has no obligation to entertain pro se motions filed by a represented party."   Abdullah v. United States, 240 F.3d 683, 686 (8th Cir. 2001).   Accordingly, I decline to rule on Williams' "supplemental" motion.

asserted two distinct claims of ineffective counsel: (1) "Plea counsel's failure to investigate impeachment evidence related to an Internal Affairs investigation of Officers Sharp, Rush, and Matthews [sic] fell below a reasonable standard of competence and rendered Williams' plea involuntary"; and (2) "Plea counsel's failure to investigate witnesses including Crystal Charleston, Corey Rodgers, and Kenya Holt, diminished Williams' estimation of the viability of his defense and thereby rendered his plea involuntary in violation of the Fifth and Sixth Amendments to the United States Constitution."

**III.   Analysis**

   A. *Ineffective Assistance of Counsel Claims*

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  To state a claim for ineffective assistance of counsel, Williams must demonstrate: (1) that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that his counsel's "performance prejudiced the defense."  Id. at 687.  The court need not address both components if Williams makes an insufficient showing on one of the prongs. Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995).

To prove the first prong, Williams must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  When evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  And, to "eliminate the distorting effects of hindsight," courts examine counsel's performance from counsel's perspective at the time of the alleged error.  Id.

˘ 5 ˘

To prove the second prong, Williams "must show that the deficient performance prejudiced the defense." Id. at 687. Here, in the context of a guilty plea, Williams "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Where the alleged error of counsel is a failure to investigate, the assessment will "depend in large party on a prediction of whether the evidence would have changed the outcome of a trial." Id.

In his first claim, Williams argues that his counsel was ineffective in failing to investigate impeachment evidence concerning Officers Shell Sharp, James Rush, and Michael Mathews. In 2009, Sharp became the target of a St. Louis Metropolitan Police Department Internal Affairs investigation into police misconduct. In April 2009, the St. Louis Post Dispatch reported on allegations that Sharp had falsified information on applications for search warrants. In August 2009, the St. Louis Post Dispatch reported that during the preceding year the circuit attorney's office dismissed at least twenty-two cases in which Sharp had been involved. In 2010, U.S Attorney's Office stated that it could no longer vouch for the credibility of Sharp. See, e.g., Holmes v. United States, No. 4:08–CV–1142 CEJ, 2011WL4445702, at *1 (E.D.Mo. Sept. 26, 2011).

Despite the subsequently discovered evidence of Sharp's abhorrent conduct, Williams has not shown that counsel's performance was unreasonable at the time of representation. Even if any of the arresting officers were subject to an Internal Affairs investigation at the time of Williams' guilty plea, there is nothing to suggest that counsel knew or should have known of such an investigation. The media reports of Sharp's misconduct were not published until eight months after Williams pleaded guilty. As a result, at the time of the alleged error, counsel had no legitimate reason to explore the possibility that Internal Affairs was investigating the arresting

officers, so his failure to do so was not objectively unreasonable.

Assuming counsel's failure explore the possibility that Internal Affairs was investigating the arresting officers was unreasonable, Williams has failed to show that it prejudiced his defense. At best, an investigation might have uncovered evidence that impeached Sharp. Yet such impeachment evidence would have involved Sharp falsifying information when applying for search warrants. This case did not involve a search warrant. More importantly, the prosecution's case was not limited to Sharp's testimony. Sharp's partner, Rush, participated in every critical part of Williams' arrest. Rush witnessed Williams engage in hand-to-hand transactions. Rush seized the gun, drugs, and money as evidence. Williams told Rush he possessed the gun and drugs, and Rush took Williams written statement, in which he states "...the police stopped me and found a pistol in the gangway that was never used by me. I got the gun from a smoker. The dope was found because I was trying to pay a few bills." [Doc. # 23-5]. Williams has failed to allege any specific information that counsel could have discovered that would have discredited Rush. Williams does argue that Mathews has also been accused of misconduct regarding applications for search warrants, but Mathews did not participate in Williams' arrest, rather he was merely listed as an "assisting officer" on the incident report created by Rush. Accordingly, Williams has not shown there is a reasonable probability that, had counsel investigated his arresting officers, he ultimately would not have pleaded guilty and would have insisted on going to trial. As a result, Williams' first claim of ineffective counsel fails.

In his second claim, Williams argues his counsel was ineffective in failing to interview the three potential eye-witnesses to his arrest: Crystal Charleston, Corey Rodgers, and Kenya Holt. "There is, however, no per se rule that failure to interview witnesses constitutes ineffective assistance. Ineffective assistance cases turn on their individual facts." Sanders v. Trickey, 875

F.2d 205, 209 (8th Cir. 1989).   In the instant case, Williams attached an affidavit from Crystal Charleston that contains discrepancies between her eye-witness account of Williams' arrest and Rush's police report. [Doc. # 17-1].   Namely, Charleston claims she witnessed a police car pull Williams' car over near the corner of Highland Avenue and Goodfellow Boulevard, which is several residential lots west of 5730 Highland, while Rush's report seems to indicate that Sharp approached Williams' car on foot shortly after Williams entered the car in front of 5730 Highland.

The minor discrepancies between Charleston's affidavit and the police report are not sufficient to prove that Williams was prejudiced by his counsel's failure to investigate. Charleston does not claim to have witnessed any police misconduct or to have any evidence exonerating Williams.   Yet Williams stood before me, in open court, and admitted under oath that he was guilty, that everything in his plea agreement was true, and that he was not coerced to plead guilty.   He also told me that he was satisfied with the representation of his attorney and that his attorney did everything he had asked him to do.   Given the prosecution's evidence against Williams, coupled with his decision to plead guilty, there is no basis to conclude that had counsel attempted to interview the three witnesses, Williams ultimately would have insisted on going to trial.   As a result, Williams' second claim of ineffective counsel also fails.

  B. *Rule 6(a) Discovery is not Warranted*

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."   <u>Bracy v. Gramley</u>, 520 U.S. 899, 904 (1997).   Rule 6(a) provides that "[a petitioner] shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."   "Good cause" requires a showing "that the petitioner may, if the facts are fully developed, be able to demonstrate

that he is ... entitled to [habeas] relief." Rucker v. Norris, 536 F.3d 771 (8th Cir. 2009).

Here, Williams seeks discovery any documents related to any Internal Affairs investigations of Officers Sharp, Rush, and Mathews. However, as discussed in detail above, counsel had no reason to suspect that any of the officers were subjects of an Internal Affairs investigation at the time of his representation. To the extent the Williams is requesting discovery of documents relating to the Internal Affairs complaint that he filed after his arrest, rather than any preexisting investigation, such complaint is irrelevant to his attempt to prove ineffective assistance of counsel. Williams confirmed that the allegations in his complaint were false. Case No. 4:08CR298 RWS [Doc. #39, p. 17]. As Williams has not shown "good cause" to believe that a full development of the facts would demonstrate he is entitled to relief, I will deny his request to conduct discovery and decline to conduct an *in camera* review of the documents.

### C. An Evidentiary Hearing is not Warranted

An evidentiary hearing need not be held if Williams' "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact." Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998). For the reasons stated above, Williams' allegations do not rise to the level that would require me to hold an evidentiary hearing.

### D. I Will Not Issue a Certificate of Appealability

As Williams has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that Dwan Orlando Williams' amended petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. # 17] is **DENIED**.

**IT IS FURTHER ORDERED** that Williams' request for discovery is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability as Williams has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

                                                   /s/ Rodney W. Sippel
                                                   RODNEY W. SIPPEL
                                                   UNITED STATES DISTRICT JUDGE

Dated this 20th day of March, 2013.